IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

AMERICAN HOME ASSURANCE COMPANY :
:    **Case No: 16-cv-01065**
:
Plaintiff,    :
:
v.    :
:
SUPERIOR WELL SERVICES, INC.    :
:
:
Defendant,    :
:
U.S. ENERGY DEVELOPMENT :
CORPORATION :
Intervenor-Defendant. :
_____ :

MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT SUPERIOR WELL SERVICES INC.'S MOTION TO COMPEL

Plaintiff American Home Assurance Company ("American Home") submits this

memorandum of law in opposition to the Motion to Compel filed by Defendant Superior Well

Services, Inc. ("Superior").

## I.    INTRODUCTION AND BACKGROUND

In its Motion to Compel, Superior seeks a broad swath of documents, in addition to the

over 9,000 documents that have already been produced in this litigation by American Home,

which are simply beyond the scope of proper discovery in this case.  Specifically, Superior seeks

documents related to the internal workings of American Home, including internal claims analysis

documents, "drafting histories," documents relating to "application of similar policies in similar

contexts," training and sales manuals and undefined regulatory materials.  But federal courts and

state courts in Pennsylvania have consistently rejected these types of discovery demands, holding

that such extrinsic documents are simply not relevant in an insurance coverage action like this one which involves the straightforward application by the Court of certain well-understood standard policy terms to the facts of the underlying claim. *See, e.g., Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. 107 (M.D. Pa. 2017) (denying motion to compel claims and underwriting files and other internal insurance company information in declaratory judgment action involving the same policy terms at issue here).

Accordingly, Superior has not met, and cannot meet, its burden of showing that the documents it now seeks are discoverable. Moreover, even if the documents it seeks arguably have some tangential relevance to the issues in dispute (which they do not), the overly broad and burdensome requests propounded by Superior violate the additional proportionality requirements which are imposed upon all discovery requests by Rule 26 of the Federal Rules of Civil Procedure.[1]

In an attempt to avoid application of governing case law to the clear insurance policy provisions at issue in this case, Superior tries to manufacture an argument that certain terms of the policies at issue should be considered "ambiguous." However, governing case law dictates that Superior's bald and unsupported assertions of "ambiguity" cannot justify the broad and unfettered discovery it seeks. *Westfield Ins. Co,* 321 FRD at 114. Moreover, Superior's claims of ambiguity are belied by a simple review of the policy terms at issue, which Superior fails to even address. Superior's other arguments in support of its Motion to Compel, including purported policy discrepancies that are unrelated to the "disputed terms" (and which Superior never even raised during the "meet and confer" process) or Superior's "statute of limitations" defense, similarly do not support its demands for wide-ranging discovery.

---

[1] American Home has also raised other additional objections to these discovery requests which are discussed in this brief in the context of the specific discovery requests propounded by Superior.

Accordingly, since American Home's objections are well-founded and supported by the controlling case law, they should be upheld, and Superior's motion to compel should be rejected.

Finally, because Rule 26 explicitly ties the relevance and ultimate discoverability of the requested documents to the particular issues in dispute in this litigation, in evaluating the relief requested by Superior, the Court must keep in mind the actual nature of the dispute between the parties. The crux of the current declaratory judgment action is whether Superior is entitled to indemnification for a judgment that was entered against Superior in a breach of contract action because, as the jury found, "Superior fail[ed] to perform its contract with U.S. Energy in a workman like manner" ("the Underlying Judgment"). *See* Ex. 1, May 21, 2018 Jury Verdict Form.[2]  Notably, this "faulty workmanship" breach of contract claim was the *only* claim presented to the jury, as the court in the underlying lawsuit had previously dismissed all negligence claims against Superior with prejudice because U.S. Energy failed to establish that Superior owed any duties that could be considered independent of its contractual obligations. *See* Ex. 2, May 15, 2018 Transcript of Proceedings, p.124, L. 13-16.  Consequently, in this declaratory judgment action, American Home seeks a declaration that the insurance policies at issue do not cover the Underlying Judgment because, *inter alia*, it is well-settled under Pennsylvania law that "faulty workmanship" claims do not constitute an "occurrence"[3] under commercial general liability policies because there was no "accident."  Indeed, the Pennsylvania

---

[2] The Underlying Judgment was entered in a lawsuit captioned, *U.S. Energy Development Corp. v. Superior Well Services, Inc.*, Civil Action No. 009586-2010. This suit was tried in the Supreme Court for the State of New York, County of Erie, and arose from U.S. Energy Development Corporation's ("U.S. Energy") contract with Superior for Superior to perform hydrofracturing services on certain natural gas wells owned by U.S. Energy. The Underlying Judgment is currently on appeal in the New York state courts.

[3] The American Home Policies at issue specifically define "Occurrence" as an "accident, including continued or repeated exposure to substantially the same general harmful conditions." *See* Ex. 3, Policy, §V. 13. (Since the relevant coverage terms are identical with respect to each of the policies at issue, American Home has attached as Exhibit 3 the pertinent provisions of one of the policies as an exemplar).

Supreme Court has conclusively held as such, in addressing a faulty workmanship claim under

policy terms identical to those at issue in this case:

> We hold that the definition of "accident" required to establish an
> "occurrence" under the policies cannot be satisfied by claims based upon
> faulty workmanship. Such claims simply do not present the degree of
> fortuity contemplated by the ordinary definition of "accident" or its
> common judicial construction in this context. To hold otherwise would be
> to convert a policy for insurance into a performance bond.  We are
> unwilling to do so.

*See Kvaerner v. Commercial Union Ins. Co.*, 908 A.2d 888, 899 (Pa. 2006); *Westfield Insurance*

*Co. v. Bellevue Holding Co.*, 850 F. Supp. 2d 683 (E.D. Pa. 2012). Thus, whether Superior can

establish that the Underlying Judgment is based on an "occurrence" under the policies issued by

American Home is the threshold issue in this declaratory judgment action, since, as Superior

concedes, it has the initial burden of showing that the Underlying Judgment falls within the

scope of the insurance policies issued by American Home.[4] *Quality Stone Veneer, Inc. v.*

*Selective Ins. Co. of America*, 229 F. Supp. 3d 351 (E.D. Pa. 2017) (noting that an occurrence is

the overarching requirement that is a prerequisite to all coverage under a commercial general

liability ("CGL") policy.

## II.    STANDARD OF REVIEW

The federal courts have significant discretion when resolving discovery disputes. *Frank*

*v. Honeywell Int'l*, 2015 WL 4770965 at *4 (E.D. Pa. August 13, 2015).  Further, while

discovery is broad, it is not unlimited.  It is well-established that the party requesting discovery

bears the burden of demonstrating that its requests for production comport with Rule 26 of the

Federal Rules of Civil Procedure. *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*,

---

[4] Whether American Home owed a "duty to defend" in the underlying litigation was previously at issue in this declaratory judgment action, but that issue has largely been rendered moot by the resolution of the underlying trial. Notably, American Home provided Superior with a complete defense of the underlying litigation, subject to a full and complete reservation of rights.

321 F.R.D at 112; *Peronis v. United States*, 2017 WL 3705058 at * n.1 (W.D. Pa. August 25, 2017).

The 2015 amendments to the Federal Rules of Civil Procedure made two material changes to Rule 26(b)(1), both of which militate heavily against broad discovery of extrinsic evidence in declaratory judgment actions related to insurance coverage.

First, the discovery sought must now be shown to be relevant to a party's claim or defense. Prior to the 2015 amendment, a court could order discovery of any matter potentially relevant to the *subject matter* involved in the action. *Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 2016 WL 5025751, at *8 (W.D. Pa. Sept. 20, 2016) (Coti, C.J.) (quoting Fed. R. Civ. P. 26(b)(1) (2000)). The current version of Rule 26(b)(1), however, eliminates the reference to the "subject matter involved" and makes clear that information must be particularly "relevant to any party's claim or defense" to be discoverable. *Id.*; Fed. R. Civ. P. 26(b)(1) *see also Fassett v. Sears Holdings Corp.*, 2017 WL 386646, at *2 (M.D. Pa. Jan. 27, 2017) (Brann, J.) ("the scope of … discovery is not without limits..[a]s such, discovery should be tailored to the issues involved in the particular case.")(internal quotations omitted).

Moreover, this concept of relevance is tempered by principles of proportionality. In the 2015 Year-End Report on the Federal Judiciary, Chief Justice Roberts described the proportionality mandate in Rule 26(b)(1) as follows:

> Crystaliz[ing] the concept of reasonable limits on discovery through increased reliance on the commonsense concept of proportionality. ... **The amended rule states, as a fundamental principle, that lawyers must size and shape their discovery requests to the requisites of a case. Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but *eliminate unnecessary or wasteful discovery*. The key here is careful and realistic assessment of actual need**. That assessment may, as a practical matter, require the active involvement of a neutral arbiter—the federal judge—to guide decisions respecting the scope of discovery.

*2015 Year-End Report on the Federal Judiciary* ("Year-End Report"), at pp. 6-7 (emphasis added).

Following the 2015 amendments, numerous courts have held that parties seeking the type of extrinsic evidence sought here are under a heightened obligation to establish the relevance of the information sought to their actual claims. *See, e.g.*, *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes,* 321 F.R.D. 107; *Koster v. Landmark Am. Ins. Co.*, 2016 WL 3014605, at *2 (M.D. Fla. May 20, 2016); *Houston Specialty Ins. Co.*, 2016 WL 7130939, at *2, 5, 5 n.4 (M.D. Fla. July 19, 2016); *see also* Fed. R. Civ. P. 26(b)(1), Committee Notes ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

Thus, Superior must clearly demonstrate, not only: 1) that the discovery sought is directly relevant to the specific claims in the case, but also, 2) that the discovery sought is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Additionally, even if Superior could make such a showing (which it has failed to do), the Court would then also have to determine that none of American Home's other asserted objections to discovery has merit.

## III.   ARGUMENT

Through the Motion to Compel, Superior seeks to compel American Home to produce three broad categories of documents: (1) underwriting files, (2) additional documents contained in claims files and (3) various other extrinsic evidence documents. For the reasons set forth below, all of Superior's requests related to these documents are objectionable and inappropriate.

A.    **SUPERIOR HAS NO VALID BASIS TO SEEK THE PRODUCTION OF THE UNDERWRITING FILES FOR THE POLICIES AT ISSUE.**

1.    *The caselaw cited by Superior does not Support its Motion to Compel.*

As an initial matter, this Court should be aware that none of the cases cited by Superior in the section of its memorandum of law related to the request for underwriting files (Sup. Mem. at 9-11) supports its arguments. The two Pennsylvania district court cases cited by Superior - *Hippo Fleming* and *Consugar* - both found underwriting files to be potentially relevant *solely* because the insured in those cases had asserted bad faith claims. *See Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 319 F.R.D. 214, 218 (W.D. Pa. 2017) ("[g]iven the bad faith claim and the related allegations, the underwriting materials may well be relevant"); *Consugar v. Nationwide Ins. Co. of Am.,* 2011 WL 2360208, at *1, *6 (M.D. Pa. June 9, 2011) (because plaintiff alleged that denial of UIM coverage was in bad faith, the court allowed discovery of underwriting files which could "reveal patterns of denials of claims.").[5] No bad faith claims, however, have been asserted by Superior in this case.

The scope of discovery allowed in a bad faith case is fundamentally different than that allowed in the type of straightforward coverage dispute that is before this Court. *See, e.g., Federal Insurance Co. v. Continental Casualty Co.*, 2006 WL 1344811, at *1 (W.D. Pa. May 16, 2006) ("the evidence needed to resolve the bad faith counterclaim is markedly different from and largely irrelevant to the resolution of the parties' coverage claims"). Indeed, contrary to Superior's assertions, the courts in Pennsylvania have repeatedly denied production of underwriting files in cases, such as this one, in which there was no pending bad faith claim. *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. at 119 (denying

---

[5] The other Pennsylvania case cited by Superior, *R & Q Reinsurance Co. v. St. Paul Fire & Marine Insurance Co.*, 2017 Dist. Lexis. 120858 (E.D. Pa. 2017), simply does not involve production of underwriting files at all.

production of underwriting file on the grounds it was "wholly irrelevant to a straightforward coverage determination"); *Fed. Ins. Co. v. Sandusky*, 2013 WL 785269, at *8 (M.D. Pa. Mar. 1, 2013) (denying discovery of various documents including underwriting file since "the intent of the parties is to be ascertained by the [written insurance policy] itself, without inquiry into extrinsic evidence"); *see also American Home Assurance Co. v. Arrow Terminals, Inc.*, 2013 WL 12157428 at * 2(M.D. Fla, Jan. 17, 2013) ("specifically, in insurance actions where the only claim is one for declaratory relief, discovery of extrinsic evidence is considered irrelevant").

*Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F. R.D. 101 (D. N.J. 1990), the only other case cited by Superior, also does not provide support for Superior's motion. Indeed, the reasoning of that almost 30-year old opinion from the District of New Jersey has been explicitly rejected by the Middle District of Pennsylvania in a 2017 case dealing with a "faulty workmanship" claim and policy terms identical to the ones at issue here. *See Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. at 117. The *Westfield* court found that *Nestle Foods* was not pertinent because: 1) it was decided under New Jersey law and did not comport with Pennsylvania law with respect to the standards for insurance contract interpretation, and 2) it involved specific unrelated policy terms (pollution exclusions) whose meaning at the time of the opinion was unsettled in New Jersey, as opposed to the policy terms at issue in *Westfield* and this case, which are terms whose plain meaning have been consistently understood and applied by Pennsylvania Courts for years. *Id.*[6]

### 2. *Superior has not shown, and cannot show, any 'ambiguous' policy term.*

Contrary to Superior's claims, the simple bald assertion by an insured that a policy term is "ambiguous" is not sufficient to meet its burden of showing relevancy under Rule 26. Indeed,

---

[6] The *Westfield* Court further noted that older cases decided long before the recent amendments to Rule 26 should be given diminished weight. *Id.* at 109.

Superior's motion to compel, and its arguments for broad discovery, appear to be based on a fundamental misunderstanding of the Pennsylvania law regarding contract interpretation. It is well-settled under Pennsylvania law that the intent of the parties is presumed to be manifested in the writing itself. *Krizovensky v. Krizovensky*, 624 A.2d. 638, 642 (Pa. Super. 1993). Moreover, the court's role in a coverage action is to ensure that both the insurer and insured receive the benefit of what is contractually agreed upon, and nothing more. *Adamitis v. Erie Ins. Exch.*, 54 A.3d 371, 376 (Pa. Super. 2012). Thus, courts must construe the terms of an insurance policy as written and may not torture the plain meaning of the words under the guise of "interpreting" a policy. *Peters v. Nat'l Interstate Ins. Co.*, 108 A.3d 38, 43 (Pa. Super. 2014). The courts also cannot rewrite the policy or give it a construction in conflict with the accepted meaning of the language used. In short, courts are required to give full effect to the plain meaning of the policy language where the language is clear and unambiguous. *Id.*; *see also Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 318 F. Supp. 2d 270, 273 (W.D. Pa. 2004), *aff'd*, 423 F.3d 318 (3d Cir. 2005)("in ascertaining the intent of the parties, the Court is to interpret the policy with an eye toward avoiding ambiguity").

Further, under Pennsylvania law, a policy term can only be considered ambiguous when the insured has specifically demonstrated to the court that the particular language at issue, viewed in the context of the entire policy, is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.*

For this reason, Pennsylvania courts have required that insureds, in seeking to discover any extrinsic evidence, including underwriting files, based on a purported ambiguity in a policy, must:

1) first identify specific language in the policy itself that is genuinely ambiguous; and

9

2) further demonstrate that the requested discovery is likely to resolve the particular ambiguity.

*Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. at 110 (rejecting production of underwriting file where no ambiguity has been shown); *see also Rhone-Poulenc Rorer Inc. v. Home Indemnity Corp.*, 139 F.R.D. 609, 612 (E.D. Pa. 1991) (noting denial of request for underwriting drafting history because such requests are not appropriate "*unless and until* there has been a finding by the District Court that one or more of the provisions of the policies at issue is ambiguous") (emphasis added).

Superior's motion fails on both prongs. In its Motion to Compel, Superior does not direct the Court to *any* specific "ambiguous" language in the American Home policies at issue. Indeed, Superior pointedly ignores (and fails to even provide to the Court) the actual wording of the policy terms at issue. *See* Sup. Mem. at 21-22. This is because a simple review of the specific language at issue shows that none of the "disputed" terms can genuinely be considered "ambiguous." Superior has also failed to show that the discovery it seeks is legitimately needed to resolve the disputes before the Court. Superior's failure to satisfy these requirements is fatal to the "ambiguity" arguments raised in its motion.

In any event, as set forth below, all of the terms of the insurance policies at issue in this case are, as a matter of law, clear and unambiguous.

### a. *"Occurrence" Definition*

The Insuring Agreement, in Section I, Coverage A of the American Home policies, provides, in pertinent part, that American Home:

> will pay those sums that the insured becomes legally obligated to pay as damages because of … 'Property Damage' to which this insurance applies….(b) the insurance applies to … 'Property Damage' only if …[it] is caused by an 'Occurrence'.

"Occurrence" is further defined in the policies as:

> an accident, including continuous or repeated exposure to substantially the same
> general harmful conditions.

*See, e.g.*, Ex. 3 (pertinent portions of the policy language), Policy, §V. 13.

The term "accident" used in the definition of "occurrence" is not ambiguous in any way.

Indeed, the Pennsylvania courts have consistently held that the word "accident" in the

"occurrence" definition must be given its plain meaning and have further held that faulty

workmanship claims like those at issue in this action do not give rise to an occurrence:

> the… "accident" required to establish an "occurrence" under the policies cannot
> be satisfied by claims based upon faulty workmanship. Such claims simply do not
> present the degree of fortuity contemplated by the ordinary definition of
> "accident" or its common judicial construction in this context.

*Kvaerner*, 908 A.2d 888, 899; *see also Firemen's Ins. Co. of Washington, D.C. v. Tray-Pak

Corp.*, 130 F. Supp. 3d 973, 983 (E.D. Pa. 2015) (holding that faulty workmanship claim did not

constitute an "occurrence" under the same definition as is set forth in the American Home

policies); *Keystone Filler & Mfg. Co. v. Am. Mining Ins. Co.*, 179 F. Supp. 2d 432, 442 (M.D.

Pa.2002) (breach of contract claim for faulty workmanship does not constitute an "occurrence"

as defined by the policy language); *Peerless Ins. Co. v. Manown Builders*, 2016 WL 3551726, at

*5 (W.D. Pa. June 30, 2016) ("Under Pennsylvania law, the underlying plaintiffs' claims against

Manown simply do not present the degree of fortuity contemplated by the ordinary definition of

'accident' or its common judicial construction in this context."); *Hagel v. Falcone*, 2014 WL

8331846 (Pa. Super. Ct. Dec. 23, 2014) (same); *Snyder Heating Co. v. Pennsylvania Mfrs. Ass'n

Ins. Co.*, 715 A.2d 483, 487 (Pa. Super. 1998) (breach of contract claims do not constitute an

"accident" or "occurrence" as defined by the policy); *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 239 (3d Cir. 2010) (breach of contract claims do not have the fortuity required by the "occurrence" definition*)*; *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 519 F. App'x 90, 92–93 (3d Cir. 2013) ("*Kvaerner* and cases following it make clear that faulty workmanship under a contract is not sufficiently fortuitous to qualify as an 'occurrence.'").[7]

Accordingly, any claim by Superior of ambiguity with respect to the "occurrence" definition must be rejected as the meaning of the term "accident" is plain. Further, as the term is not ambiguous, it cannot be used to justify the discovery sought by Superior.

### b. *"Property Damage"*

The "Insuring Clause" of the American Home policies also clearly states that "Property Damage" can be considered within the scope of coverage under the policies *"only if …* the property damage is caused by an occurrence." Ex. 3. The American Home policies further define "Property Damage," in pertinent part, as a) physical injury to tangible property, including all resulting loss of use of that property... or b) loss of use of property that is not physically injured. *Id.*

In arguing ambiguity with respect to the term "Property Damage," Superior ignores the wording of the Insuring Clause and instead wrongly appears to conflate any purported physical damage with **covered** property damage within the scope of the policies at issue. Such a claim is

---

[7] Superior's attempt to distinguish the *Kvaerner* case and its progeny through citation to *Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 83 A.3d 418, 425 (Pa. Super. 2013) is without merit, since the court's ruling in that case was a preliminary ruling, without prejudice, that was explicitly based on the presence of tort-based claims seeking consequential damages, including damages for claims of personal injury, which were potentially independent of the contractual claims. *See Northridge Vill. LP v. Travelers Indem. Co. of Connecticut*, 2017 WL 3776621, at *7-8 (E.D. Pa. Aug. 31, 2017) (noting that *Indalex* involved "tort-based claims" and that the courts in the Third Circuit "have consistently applied *Kvaerner* and held that claims based upon faulty workmanship do not amount to an 'occurrence'"). In the instant case, there is no question that the Underlying Judgment is solely a judgment for breach of contract based on faulty workmanship. Indeed, as noted above, the court in the underlying suit specifically dismissed the negligence claims because Superior had no duties that were not based in contract. Furthermore, Superior's claim that *Indalex* governs here is a legal dispute as to the breadth of *Kvaerner*, not a dispute as to the plain meaning of the term "accident."

merely a misstatement of the policy terms. The mere showing of some purported physical damage is not sufficient to trigger coverage under any policy. The policy terms at issue, instead, specifically and unambiguously require a causal connection between any claimed "property damage" and the claimed "occurrence." In short, if there is no "occurrence" under the American Home policies, there can be no covered property damage, regardless if there was some purported physical damage. *See Fireman's Ins. Co. of Washington D.C. v. Tray-Pak Corp.*, 130 F. Supp. 3d 973, 981 (E.D. Pa. 2015) ("in order for a claim to trigger coverage, there must be a causal nexus between the property damage and the 'occurrence' i.e. a fortuitous event"); *Washington Energy Co. v. Century Sur. Co.*, 407 F. Supp. 2d 680, 689 (W.D. Pa. 2005) ("An obligation to indemnify arises only if it is established that the insured's damages are actually within the coverage provided in the policy").

Perhaps more importantly with respect to the current discovery dispute, Superior has not shown, and cannot show, that any ambiguity exists as to the wording used in the Insuring Clause or in the definition of "Property Damage" in the American Home policies. There is no ambiguity created merely because Superior disagrees as to the construction of a straightforward term. *See Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 885 (Pa. Super. 2000). Superior has also failed to demonstrate that the broad discovery it seeks would serve to resolve any purported ambiguity, as no such ambiguity exists.[8]

---

[8] Contrary to Superior's arguments, this analysis is not altered in any way by *Washington Energy Co. v. Century Surety Co.*, 407 F. Supp. 2d 680, 694 (W.D. Pa. 2005). In that case, unlike the instant case before this Court, the insurer did not dispute that there had been an "occurrence" under the policy at issue and a causal connection between the claimed damage and the occurrence. *Id.* at 688-89 (Century is not basing its denial of coverage on the language in the Insuring Agreement). Moreover, the fact that the *Washington Energy* court found that "natural gas" which had been contaminated in that case was "property" is immaterial to the present case because even if some purported "loss of use" of natural gas did fall within the definition of "property damage" (which American Home does not concede), there still would be no "property damage" caused by an "occurrence" in this case. Furthermore, there was no claim by U.S. Energy that Superior's actions resulted in the contamination of "natural gas" or any type of physical damage to natural gas itself. Instead, as Superior admitted in its Answer in this declaratory judgment action, U.S. Energy's claim is that Superior's breach of contract "caused the wells [which Superior hydorfractured]

Accordingly, not only has Superior failed to show that there is any "ambiguity" in the term "Property Damage," but it has also failed to show that any of the discovery it seeks is legitimately needed to resolve the meaning of any term.

### c. The "Impaired Property" Exclusion

The American Home policies contain an "Impaired Property" exclusion, which states:

> This exclusion provides that the Policy does not cover:
>
> Property Damage to 'Impaired Property' or property that has not been physically injured, arising out of:
>
> (1)    a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work' or
>
> (2)    *a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.*
>
> This Exclusion does not apply to loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

*See* Ex. 3,  Section 1, Coverage A, Exclusion M (emphasis added).

'Impaired Property' is further defined as:

> tangible property .... that cannot be used or is less useful because:
>
> a. It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. *You have failed to fulfill the terms of a contract or agreement*;
>
> if such property can be restored to use by:
>
> a. the repair, replacement, adjustment or removal of 'your product' or 'your work'; or

---

to be incapable of producing the volume of natural gas that they would otherwise have been capable of producing." Dkt. 55, Superior Answer at ¶ 14.  Thus, any claimed physical damage here is to the wells on which Superior performed its hydrofracture process pursuant to its contract. *See also*, Ex. 1 at numbered paragraphs 2 and 3. (It should also be noted that while American Home is not bound by the findings in the underlying case because it was not a party to that case, Superior is so bound.)

14

          b. Your fulfilling the terms of the contract or agreement.

Ex. 3, Section V. 8 (emphasis added).

      Instead of actually trying to articulate any purported ambiguities in this exclusion, Superior's argument solely relies on the fact that a similar provision was found to be potentially ambiguous *as applied to the very differing facts* in another case. *See Washington Energy*, 407 F. Supp. 2d. at 697-700.

      The *Washington Energy* case is inapposite to the present case. First, *Washington Energy* focused on the "sudden and accidental" exception to the exclusion, which is not relevant to any issues in this case.[9] Second, in finding the "impaired property" exclusion to be potentially ambiguous *as applied* to the "unique facts" before it, the *Washington Energy* court emphasized that the case did not in any way involve a breach of contract claim and that the insurer, unlike American Home here, was not disputing that there had been an occurrence or resulting damage. *Washington Energy*, 402 F. Supp. 2d at 693-94 ("there is no indication in the record before this Court that the [claimed] losses were based on breach of contract or warranty claims…[q]uite to the contrary, it appears that the amounts Washington Energy paid … were for consequential damages resulting from an occurrence as defined under the Policy.")

      As the *Washington Energy* court noted, in cases involving breach of contract/warranty claims, such as the one before this Court, the federal district courts and Pennsylvania state courts have consistently held that similar "Impaired Property" exclusions were unambiguous and applied to bar coverage for such claims. *See, e.g., Illinois Union Ins. Co. v. Hydro Int'l, PLC*, 929 F. Supp. 2d 365 (M.D. Pa. 2013) (holding breach of contract claims fell squarely within the

---

[9] As the Pennsylvania Supreme Court has opined "when determining whether the language in an insurance policy is ambiguous, such determination is not made in a vacuum, but rather, must be made in light of the *particular facts of the case before the court." See Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 978 (2001) (emphasis added).

scope of an identical impaired property exclusion as the one at issue in this case); *Solcar Equip. Leasing Corp. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 606 A.2d 522 (Pa. Super. 1992) ("appellants herein allege property damage to the homes as a result of Solcar's faulty concrete work … even were we to find an occurrence which would at first blush require PMA to defend, these coverage exclusions preclude finding a duty on PMA's part."); *Puritan Ins. Co. v. Aldan Rubber Co.*, 1988 WL 9880 (E.D. Pa. Feb. 9, 1988), *aff'd,* 866 F.2d 648 (3d Cir. 1989) (similar impaired property exclusion precluded coverage for breach of warranty claim).

In this case, a simple reading of paragraph M.2 of the Exclusion shows not only that it is straightforward and clear in meaning, but that its plain meaning would preclude coverage for the Underlying Judgment under the governing case law. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79 (3d Cir. 2001) ("under Pennsylvania law, a contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends.")

Thus, Superior has not shown, and cannot show, any "ambiguity" in the policy terms at issue, and as such, its claim that an "ambiguity" justifies the expansive discovery it seeks must necessarily fail.[10]

### 3. Purported "policy discrepancies" also do not support Superior's Motion.

Superior raises for the first time in its Motion to Compel an argument that **all** of its extremely broad discovery requests are somehow necessary to resolve purported policy discrepancies. Superior Mem. at 7.  Superior did not raise this argument in any of its "meet and

---

[10] It should also be noted that even if Superior could identify an ambiguity with respect to some relevant term of the American Home policies (which it cannot), such a showing would not serve to justify broad discovery into any other terms of the policies.  As the Pennsylvania appellate courts have held, "any ambiguity once asserted, however tortuously, cannot be applied *ad libtum* to any other term of the Policy, however clear and unambiguous in itself." *Peters v. National Interstate Ins. Co.*, 108 A.2d. 38, 48 (Pa. Super 2014). Thus, Superior's Request No. 4, which seeks the entire underwriting file, plus the drafting history for every single term in the policies at issue is clearly overbroad, unduly burdensome and not in compliance with Rule 26.  *See* Superior's Mem., Ex. 0, pp. 3-4 (setting forth American Home's objections to the so-called revised requests).

confer" letters. This new argument is clearly nothing but a desperate *ex post facto* attempt to manufacture justification for discovery requests which Superior knows are blatantly objectionable.

First, as Superior concedes, American Home has agreed to produce certified copies of the policies at issue, which should resolve any purported discrepancies, as it will identify whether the so-called missing endorsements were part of the issued policies.

Second, none of the purported discrepancies relate in any way to the coverage terms in dispute between the parties or the issues set forth in the pleadings.

For example, in support of its Motion, Superior references a supposedly missing endorsement which it claims deletes two exclusions that it claims are of "potential relevance here" – specifically, the Underground Resource and Equipment Exclusion and an Oil and Gas Producing Operations Exclusion. A review of the pleadings, however, shows that neither of these exclusions was raised in American Home's Declaratory Judgment Complaint. Superior has offered no reason why discovery into these purported endorsements has any relevance to the claims and defenses at issue in this litigation.

Superior's second reference to an endorsement purportedly increasing a "per project general aggregate limit" also has not been shown to be relevant to any of the issues in this case. This is a declaratory judgment action focused solely on the meaning and application of specific policy terms. Superior has not shown any dispute as to the limits of the policy at issue. Further, as noted above, any such dispute would be resolved by production of the certified copies of the policies, which American Home has agreed to provide and is the process of producing.

Lastly, even if there were an issue in this action relating to these endorsements (which there is not), Superior has not demonstrated why any relevant discovery would not be properly

limited to the simple issue of whether these two endorsements were or were not part of the issued policies.

The so-called missing endorsements simply do not justify, and cannot justify under the relevance and proportionality requirements of Rule 26, any wide-ranging discovery into documents such as claims files, documents related to similar policies of other insurers, underwriting manuals, sales manuals and regulatory filings, which are included in the incredibly expansive categories of documents sought by Superior. Simply put, none of these documents are likely to shed any light on whether these endorsements were part of the policies issued to Superior by American Home.

**B.      THE CLAIMS FILE DOCUMENTS SOUGHT BY SUPERIOR ARE NOT SUBJECT TO PRODUCTION.**

As an initial matter, American Home notes that it has already produced thousands of documents from its claims file, including, *inter alia*: a) the reservation of rights letters and other correspondence explicating its coverage position, including any correspondence with Superior and Superior's brokers; and b) the documents in American Home's possession relating to the underlying litigation, including all of the documents from the underlying litigation that were received and reviewed by American Home in connection with its claims determinations. However, that has not satisfied Superior with respect to its request for American Home's "Claims File." This is apparently because Superior is in reality seeking American Home's internal analysis relating to the claim and coverage dispute, including privileged material.

Superior has not cited a single case that would support production of such internal documents in a coverage action like this one. It cannot do so because the courts have routinely held that information about *how* or *why* the insurer arrived at its coverage decision is simply not relevant in the absence of a bad faith claim. In a coverage action such as this one, the courts

18

must instead determine as a matter of law whether the claim at issue falls within the scope of the written terms of the policy, applying those terms as written. Accordingly, in declaratory judgment actions limited to coverage issues like this one, courts have routinely denied production of such internal claims file documents. *See, e.g., Fed Ins. Co. v. Sandusky*, 2013 WL 785269, at *8 (M.D. Pa. Mar. 1, 2013) (denying discovery requests for claims file); *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. at 110 (claims files not discoverable); *Koster v. Landmark Am. Ins. Co.*, 2016 WL 3014605 (M.D. Fla. May 20, 2016) (denying production of internal claims files as information about what steps the insurer took to arrive at its coverage decision is not relevant in the absence of a bad faith claim).

As the *Westfield* court noted in a "faulty workmanship" coverage dispute focusing on the exact policy terms at issue in this case, discovery of a claims file is not relevant in a declaratory judgment action, in which no bad faith claim has been asserted, since in such actions the language of the agreement controls and will suffice to dictate the proper outcome without resort to any extrinsic sources. *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. at 114.; *see also Sandusky*, 2013 WL 785269, at *8 ("In an unambiguous, written contract, the intent of the parties is to be ascertained by the document itself, without inquiry into extrinsic evidence.").

Further, as noted above, because Superior has not made, and cannot make, any argument that the policy terms in dispute can be considered genuinely ambiguous, it cannot rely on any purported ambiguity to justify the irrelevant discovery it seeks. Indeed, the *Westfield* court made clear that a "bald assertion of ambiguity" does not justify discovery of claims files, let alone the broader range of documents sought by Superior, because with such a low threshold "any coverage dispute could explode into unlimited discovery solely on an insured's *ipse dixit*

19

assertions of ambiguity." *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. at 114. Instead, the *Westfield* court held that "a movant must make some affirmative showing that the mutual intent of the parties is contrary to the agreement's facial meaning and had previously been objectively expressed." *Id.* In its Motion to Compel, Superior has not come close to meeting this burden.

Superior's attempts to distinguish *Westfield* and *Sandusky* are without merit. The fact that *Westfield* involved modular homes, instead of wells, is simply not germane to the standards it sets forth to determine the discoverability of extrinsic evidence in the context of a "faulty workmanship" claim dealing with the *exact same policy terms* at issue in this case. The case is clearly on point. Further, while the policy language at issue in *Sandusky* is different from the policy language at issue here, the *Sandusky* court's discussion about the discoverability of claims files in the absence of bad faith claims applies, regardless of the type of policy at issue.

Lastly, Superior's claim that American Home's internal claims file documents are relevant to its statute of limitations defense is without merit. The issue with respect to the statute of limitations defense is focused on the objective determination by the Court as to when American Home had sufficient factual information *about the underlying claim* that would have required it to file a declaratory judgment action with respect to its duty to defend and indemnify. *See* Mem. Opinion denying Sup. Motion to Dismiss (Dkt. 54) at 6 ("the Court must determine when [American Home] had a sufficient factual basis to support its contentions that there was no duty to defend or indemnify Superior Well").[11]

---

[11] Notably, as set forth above, it was not until May 2018 that the underlying court dismissed all remining negligence claims and established that there were no potential tort-based claims against Superior. *See* Ex. 2.

The documents relating to that issue come from the underlying claim information

provided by Superior and the documents relating to the underlying litigation.   These documents,

as noted above, including all correspondence with Superior and all documents in the claims file

that American Home received about the claims and defenses asserted in the underlying litigation,

*have already been produced.*   Superior is also free to depose the American Home claims adjuster

on these documents.   Thus, Superior has not shown that the additional internal documents it

seeks are relevant, let alone needed, to resolve any issue.[12]

## C.     THE OTHER DOCUMENTS SOUGHT BY SUPERIOR ARE CLEARLY IRRELVANT, DISPROPORTIONATE TO THE NEEDS OF THIS CASE AND OVERLY BROAD.

Superior's other requests for a wide-ranging array of other "extrinsic evidence" are even

less justified than their objectionable requests for claims and underwriting files.   Indeed, a review

of these requests, addressed seriatim below, demonstrates that the requests, on their face, are

vague, ambiguous, not limited in time or scope, and overly broad, especially given that American

Home operates in a regulated industry and has issued thousands of policies which are the subject

of thousands upon thousands of claims. Indeed, simply trying to identify documents potentially

responsive to these broad requests would force American Home to conduct a clearly burdensome

search and review of almost every file and document in its possession.   Thus, these requests for

irrelevant documents are clearly disproportional to the needs of this case and are a classic

example of the type of unfettered and abusive fishing expedition that the recent amendments to

Rule 26 were intended to rein in.   American Home respectfully suggests that this Court should be

---

[12] Even if that were not the case, Superior has not shown that its expansive requests, which do not reference the statute of limitations issue at all, could be considered properly targeted to any legitimate need in this case as required by Rule 26.  Further, to the extent the additional discovery sought by Superior relates to privileged material, including privileged documents relating to the initiation and conduct of this litigation, the requests improperly seek to invade attorney-client and work product privileges and American Home's litigation strategy.  Rule 26(b)(2)(C) requires courts to limit discovery otherwise allowed by these rules in these types of circumstances.

guided by Chief Justice Roberts' instruction that the Court is to act as a gatekeeper to "eliminate unnecessary and wasteful discovery." *See* Year End Report, pp. 6-7 (noting that the key is a careful and realistic assessment of actual needs of the case based on the specific nature of the issues actually in dispute).

There can be no doubt that Superior has entirely failed to meet its burden of demonstrating that these additional requests seek even remotely relevant documents, or can be considered in any way proportional to the legitimate needs of the case, as explicitly required by Rule 26. Superior's requests, for the most part, are predicated on the claim that these documents are needed to resolve a purported ambiguity in the policy terms. But as discussed above, Superior has not demonstrated, and cannot demonstrate, the threshold requirement that any of the so-called disputed terms are ambiguous in any way. Superior also has not shown how the broad extrinsic evidence it seeks could be seen as likely to help resolve any purported specific ambiguity in any so-called disputed term.

**Internal Manuals.** In Document Requests nos. 6, 7, 9, 10 and 11, Superior seeks the production of basically every internal manual, policy statement, educational material, written instruction or "other document" issued in the last fifteen to twenty years by American Home in connection with underwriting, sales, training and/or claims processing. Notably, the only case Superior cites (at pages 13-14 of its brief) in support of the these patently overbroad, vague, harassing and burdensome requests is a bad faith case, *Consugar*. There is simply no case law supporting such broad discovery in an insurance coverage action such as this one. Moreover, since there is no bad faith claim in this case, American Home's claims handling practices and procedures (and any manuals setting forth or reflecting such practices) are simply not relevant to any issue in this case.

Furthermore, as Superior concedes, American Home has already provided information that the claims adjuster for this claim did not reference any manuals with respect to adjusting the claim at issue.  Thus, no such manuals can be relevant to the interpretation of the policy by the adjuster or to his knowledge with respect to the underlying claim or with respect to the statute of limitations defense.

**Undefined "Governmental Communications."** - Document Request No. 12 seeks "letters, memoranda, or other documentation relating to any state administrative or other governmental review of any relevant issue regarding the processing of the Subject Policies of insurance and/or a policy or claim(s) similar to those issued to or submitted by Superior Well." As noted in American Home's objections to this request and its correspondence as part of the "meet and confer" process, it is difficult to even parse this request in order to try to determine the scope of what Superior is seeking.[13]

It is clear, however, that the types of documents Superior seeks here are not even remotely relevant to any issue in this litigation or proportional to the needs of this case.  First, as discussed above, because Superior has not demonstrated, and cannot demonstrate, any ambiguity in any disputed term, it is not entitled to any extrinsic evidence of any kind.  Every case that Superior cites relies on existing evidence of some potential ambiguity, which has not been shown to exist here.  Further, even if Superior were able to establish a genuine ambiguity with respect to a specific disputed term (which it cannot do) the scope of this request, which seeks documents related to every term in the policies at issue and in "any similar policy," is the epitome of a disproportionate and unduly burdensome request.

---

[13] Notably, as shown by the "meet and confer" correspondence, Superior decided not to revise or explain this request in any way despite American Home's objections. *See* Sup. Mem., Ex. O as 2

23

Tellingly, the first full paragraph of page 16 of Superior's brief reveals that Superior is merely engaged in a quintessential fishing expedition. The rationale it expresses for seeking these documents is that Superior speculates, without a single piece of evidentiary support, that it *might* be possible that sometime in the "last decade," American Home communicated or expressed in some unknown fashion to some unknown regulator or governmental authority how some unspecified policy term might or might not respond to an instance of some unknown kind where a natural gas well had been damaged in some unknown way. The proportionality and relevancy requirements of Rule 26 were specifically intended to put an end to such abusive, unsupported and burdensome fishing expeditions. Moreover, to the extent that this undefined request seeks information related to other claims by other insureds, it is even more objectionable and disproportionate. The courts in the Third Circuit have long held that information related to other claims under other policies issued to other insureds bear no relevance to coverage determinations. As the Honorable Donald Van Artsdalen explained in the *In re: Texas Eastern Transmission*, No. MDL 764 (E.D. Pa. July 26, 1989): "it is self-evident that the positions taken by the insureds as to other policies involving other policyholders on other claims would depend upon a myriad of variables. If allowed, such discovery would get off into issues totally irrelevant to any issues involved in this case." (quoted and followed by *Conn. Indem. Co. v. Markman*, 1993 WL 452104 *9 (E.D. Pa. October 19, 1993)).

**Drafting Histories.** Superior's request for drafting histories of the subject policies of insurance (included in Request No. 4) are irrelevant for the same reasons the underwriting files are irrelevant. *See Rhone-Poulenc Rorer Inc.*, 139 F.R. D. at 612. As Superior has entirely failed to make any showing of even arguable ambiguity in connection with any policy term in dispute, it is not entitled to any extrinsic evidence, let alone the broad discovery it seeks here in

violation of the proportionality requirements of Rule 26.  Indeed, the patently irrelevant and disproportionate nature of Superior's Request can be seen in its definition of the so-called "Disputed Policy Provisions," which through use of "including, but not limited to" language, essentially could encompass documents relating to virtually every term, definition and exclusion in the policies regardless of any actual ambiguity.  *See* Sup. Mem. Ex. O at 3.

CONCLUSION

In sum, Superior has failed to meet its burden on this Motion to Compel because it cannot establish the relevance of the extrinsic evidence sought.  Moreover, even if the documents had some remote relevance (which they do not), Superior has failed to demonstrate that any of its discovery requests, to which American Home Objected, are proportional to the realistic and legitimate needs of the parties in this straightforward coverage case.  On the contrary, the relevant case law from the federal courts and Pennsylvania state courts conclusively demonstrates that American Home's objections to the specific requests at issue are well-founded and fully in accord with the law.  As a result, this Court should deny the Motion to Compel in its entirety.

.

Respectfully submitted,

Date:  May 29, 2019

Wiggin and Dana, LLP

By:/s/ Joseph G. Grasso